Chief Judge Fuld.
In each of these cases, the Appellate Division annulled a determination of the State Liquor Authority on the ground that it was based upon evidence obtained by an illegal search and seizure, and the primary question presented is whether the exclusionary rule of Mapp v. Ohio (367 U. S. 643) applies to administrative proceedings as well as to criminal prosecutions. We discuss that question before examining the several issues posed by the individual appeals.
The function of the exclusionary rule, as stated by the Supreme Court (Mapp v. Ohio, 367 U. S., at p. 656), “ ‘ is to deter — to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.’ ” (See, also, Kaufman v. United States, 394 U. S. 226, 229; Lee v. Florida, 392 U. S. 378, 387; Elkins v. United States, 364 U. S. 206, 217.) To the extent that the State, or its agents, can bypass the deterrent effect of the exclusionary rule by using the fruits of an illegal search ilia “ civil ” or “ administrative ” proceeding, the incentive for enforcement and investigative personnel to exceed constitutional limitations on their activity remains and the effectiveness of the rule as a deterrent is diminished. Recognizing this, the courts have never hesitated to apply the "exclusionary rule to a variety of proceedings, including those which, at least in form, are not of a' criminal character. (See Plymouth Sedan v. Pennsylvania, 380 U. S. 693; Incorporated Vil. of Laurel Hollow v. Laverne Originals, 17 N Y 2d 900; Matter of Leogrande v. State Liq. Auth., 25 A D 2d 225, revd. on other grounds 19 N Y 2d 418.) In the Plymouth Sedan case (380 U. S. 693, supra) — a civil forfeiture suit brought to confiscate an automobile allegedly used for the illegal transportation of alcoholic beverages — the Supreme Court, after noting that the object of the action, “ like a criminal proceeding, is to penalize for the commission of an offense against the law ” (380 U. S., at p. 700), went on to say (p. 701):
*654 ‘ ‘ It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forféiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible.”
The Authority seeks to distinguish the Plymouth Sedan case on the ground that its sole function is administrative — the regulation of the liquor industry—and the enforcement of the criminal law is, at most, a peripheral concern.[1] To the extent that this is true, it makes the argument all the more compelling that, if the exclusionary rule is to be effective, it may not be limited to purely criminal proceedings. It is no longer subject to question that State agencies, charged with purely administrative responsibilities, just as those engaged in the enforcement of the criminal law, must conduct their investigative and enforcement functions in compliance with constitutional requirements and, more particularly, within the confines of the Fourth Amendment. (See Camara v. Municipal Ct., 387 U. S. 523, 530-531; See v. City of Seattle, 387 U. S. 541.)
Claiming that adequate protection of Fourth Amendment rights is assured if illegally obtained evidence is not admissible in criminal prosecutions, the Authority urges that the exclusionary rule should not be extended to administrative proceedings. In the absence of any other means of enforcement, however, the effect of such a restricted application of the rule would be to place the agency beyond the reach of the Constitution and there would be no way to protect licensees from abuse and harassment at the hands of its employees or agents.
*655 In Matter of Leogrande v. State Liq. Auth. (25 A D 2d 225, revd. on other grounds 19 N Y 2d 418, supra), the Appellate Division had annulled the Authority’s determination that the licensee had used his premises for gambling activities on the ground that the evidence upon which the determination was based was illegally obtained. “ All of the reasons in policy which suggest the application of the exclusionary rule to illegal searches and seizures by public officers in criminal proceedings ”, Judge Bkbitel, writing for that court declared (25 A D 2d at pp. 231-232), “ apply equally to administrative proceedings of the present character, namely those involving penalties, forfeitures, or other sanctions for the violation of law or regulation * * * The exclusionary rule rests on a theory of deterrence; that policy would not be served if the illegal official activity could be used, despite unavailability in criminal proceedings, to effect parallel sanctions of forfeiture in an administrative proceeding.” The Court of Appeals reversed—but on the very different ground that the petitioner had failed to raise the question before the Authority and had thereby not preserved it for review.
The Authority contends that the Appellate Division’s decision in Leogrande was inconsistent with our holding in Sackler v. Sackler (15 N Y 2d 40). Although we did, in Sadder, permit the use of unlawfully obtained evidence in a civil suit, we based our conclusion solely on the ground that the unlawful entry was committed by private individuals as opposed to representatives of Government and that, in the absence of State action, there was no constitutional violation involved. The court’s opinion in Sadder expressly noted that the decision would not be controlling in a case where the evidence was illegally obtained "by governmental people ” .(15 N Y 2d, at p. 44; see, also, People v. Horman, 22 N Y 2d 378, 381-382).
The Authority, just as any other State agency, is obligated to conduct its activities in conformity with the demands of the Constitution. When its agents exceed those limits, it should not be permitted to avail itself of the fruits of such unlawful ■ activity in order to impose sanctions upon the persons whose constitutional rights have been violated.
With this principle in mind, we proceed to a discussion of each of the three cases before us.
*656 Matter of Finn’s Liquor Shop v. State Liquor Authority
Acting on a tip that sales were being- made on credit, two inspectors from the 'State Liquor Authority entered Finn’s Liquor Shop, in New York City, on a January day in 1967, and asked the store manager, the only person present, if they could inspect the premises. When the manager told them to “ [g]o ahead,” one of the inspectors went immediately to a room in the rear of the liquor store where a coat was hanging. Without bothering to ascertain its ownership, the inspector went through the pockets of the coat and found sales slips indicating that sales had been made, impermissibly, on credit.
The licensee’s principal — Martin Finn—arrived at the premises shortly thereafter and, when confronted with the slips which the investigator had seized, he admitted that they were used for sales on credit. Finn was called to the offices of the Authority a week later for further questioning but, upon the ■advice of counsel, refused to answer any questions on the ground that to do so would incriminate him. Charges were filed against the petitioner, alleging- that he had sold liquor on credit and had refused to answer questions in an investigation conducted by the Authority (Alcoholic Beverage Control Law, § 100, subd. 5: Buies of the State Liquor Authority, rule 36, subd. 15; 9 NYCBB 53.1 [o]). At the commencement of the hearing on those charges, the petitioner requested that all of the evidence resulting from the search of the coat be suppressed as unlawfully obtained. The hearing officer, relying on the Leo grande case (25 A D 2d 225, supra)—which had not yet been decided by our court — agreed that illegally seized evidence would be inadmissible. However, voicing the opinion that he lacked jurisdiction to pass upon the constitutional question, he declined to suppress the evidence and suggested that the petitioner address his application to the Supreme Court. Belying upon the sales slips, Mr. Finn’s admission as to their purpose and his subsequent refusal to answer questions, the Authority ordered a 10-day suspension of the license, a $1,000 bond forfeiture and the issuance of a letter of warning.
The petitioner thereupon instituted this article 78 proceeding in which it renewed its claim that the evidence was the product of an unlawful search and seizure and, for that reason, could *657 not be used against it.[2] The Appellate Division, First Department, unanimously sustained the petition and ordered that the Authority’s determination be annulled. On appeal to our court, the Authority argues (1) that, as already indicated, the exclusionary rule does not apply to administrative proceedings; (2) that the evidence was obtained during the course of an authorized administrative inspection and involved no Fourth Amendment violation; and (3) that, in any event, the refusal by Finn to answer questions a week after the sales slips were found was not a fruit of the search and seizure and was sufficient, in itself, to support its determination.
We have already declared that, when a search is under-, taken in violation of the Fourth Amendment, the exclusionary rule applies and the evidence may not form a predicate fori the imposition of penalties. It is, therefore, necessary to ascertain whether, in fact, any such constitutional violation occurred in this case. The Authority maintains that it had a statutory right to make an administrative inspection of the licensed premises, that this included all items of personal property, such as the coat in the rear room, and that the exercise of this right was consistent with Fourth Amendment protections.
It should be pointed out, at the outset, that it is not at all clear that the Authority has the broad statutory power, which it claims, to conduct investigations of the premises of licensees for off-premises consumption.[3] Moreover, it is highly doubtful that an inspection of the ‘ ‘ premises ’ ’ would include an article of personal property (here, the coat) —not used in the conduct of the business and whose ownership was not known. What is even more significant is that such a broad grant of statutory *658 authority to conduct warrantless searches would be unconstitutional. (See See v. City of Seattle, 387 U. S. 541, supra; see, also, Camara v. Municipal Ct., 387 U. S. 523, supra.) In See (387 U. S. 541, supra), the Supreme Court invalidated a local ordinance which, similar to the provisions relied upon by the Authority, required owners of business establishments to permit administrative inspections of their premises without a warrant. The court held that, with respect to those portions of business property not open to the public, the Fourth Amendment protections apply. In reaching that conclusion, the court declared (p. 543):
“ The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant. ’ ’
Although the court did indicate that the Constitution might not inhibit certain narrowly defined inspection procedures (cf. Colonnade Catering Corp. v. United States, 410 F. 2d 197), the implication of the decision in the See case is clear. No State may require, as a condition of doing business, a blanket submission to warrantless searches at any time and for any purpose. Applying this principle to the present case, it follows that the investigator’s entry into the back room of the store and, particularly, his search of the coat may not be constitutionally justified.[4]
The Authority also contends that, since the petitioner’s refusal to answer questions was not the product of the search, this was a sufficient basis, in and of itself, for its determination. Although it is difficult to see how a provision which imposes penalties for refusing to answer questions may be consonant with the requirements of the Fifth Amendment, we need not *659 here confront that problem. The Appellate Division found, and there is no evidence to the contrary, that ‘ ‘ the knowledge used by the [Authority] was gained as the result of an illegal search, and excluding the fruit of the search would have rendered pointless and unnecessary the subsequent interrogation.” No basis exists for disturbing the conclusion reached below that the questioning of Finn, like all of the other items in evidence, was the product of the unlawful search and seizure, and that the Authority’s determination, grounded on such evidence, must fall.
Matter of La Penta v. State Liquor Authority
This petitioner holds a hotel liquor license. After intercepting his telephone conversations for a month—pursuant to an ex parte eavesdropping order — the police obtained a warrant to search his home, where they found various apparatus used for gambling. He was thereafter charged with a crime and, on his application in the course of that criminal prosecution, the -County Court found that the order authorizing the wiretaps had been improperly issued and directed that the resulting evidence be suppressed. The Authority then instituted a proceeding for the cancellation of his license. Upon the hearing which it then conducted, the Authority received that very same wiretap evidence over objection. It concluded that the petitioner was of unfit character and ordered the cancellation of his license. The Appellate Division—-in this instance, the Fourth Department — annulled the determination.
Although the applicability of the Mapp rule to administrative determinations was argued in this case, as in the others, there exists, wholly apart from the requirements of the Federal Constitution, an explicit statutory prohibition against the use of evidence procured through illegal wiretaps. CPLR 4506 provides, in so many words, that evidence obtained by any act of eavesdropping in violation of the applicable statutes and evidence obtained through or resulting from information obtained by any such act “ shall be inadmissible for any purpose in any civil or criminal action, proceeding or hearing ” (emphasis supplied). Despite this express prohibition, the Authority argues, the petitioner failed to properly raise the question and it was, therefore, privileged to accept and consider such evidence.
*660 The fact is that the petitioner did object to its admission but the Authority insists that the objection was insufficient and contends that, in addition to his objecting and furnishing a copy of the County Court’s order suppressing the evidence, he should have presented proof to support his position that the eavesdropping order was invalid and the search and seizure unlawful. More specifically, the Authority—noting that it is in no way associated or connected with the District Attorney’s Office — argues that, in the absence of privity, it cannot be bound by an order issued in a criminal proceeding to which it was not a party. In short, says the Authority, since it was free to disregard the court’s order, the petitioner was obliged to produce, at the administrative hearing, independent proof that the wiretaps were, in fact, illegal and that he had standing to object to their use.
This argument stems from a misapprehension of the agency’s function. Although it has broad powers in its own sphere, it has never been given the authority to determine whether sufficient grounds exist for the issuance of a search warrant or an ex parte eavesdropping order. Manifestly, such a decision must 'be made, in the first instance, by a court and, presumably, only a court may review it.[5] Certainly, when a magistrate, issuing such an order, has been reversed by a superior court, the Authority may not continue to treat the lower court’s order as valid and act upon it. The impropriety of permitting the agency to pass upon the validity of the search is illustrated by the facts of this case. Absent a valid warrant, the search of the petitioner’s home and the seizure of the property were unlawful. Once the Authority was presented with the County Court’s order, which voided the eavesdropping order and the subsequently issued search warrant, there was no possible basis *661 upon which the search could be sustained as lawful. Since, in the absence of judicial sanction, the search was unlawful per se, there is not the slightest justification to require the petitioner to litigate the question anew before the administrative agency.
Simply put, the evidence against this petitioner, having been obtained through the use of an ex parte eavesdropping order which was invalidated by competent judicial authority, was inadmissible for any purpose. The Authority’s determination based upon such evidence was, therefore, properly annulled.
Matter of Malik v. State Liquor Authority
In the fall of 1966, two police officers, while in the petitioner’s bar in the City of Buffalo, observed two customers reading from a racing form and making notations on slips of paper. They saw each of the men take a sheet of paper, fold a dollar bill inside it and hand it to the petitioner who was tending bar. One of the officers arrested her and seized the papers, which appeared to be betting slips. The officer then proceeded to search the kitchen, in the rear of the premises, where he found various records and material used in bookmaking.
The City Court of Buffalo —• in which criminal charges were brought against the petitioner — found, on a motion to suppress evidence, that there was no probable cause to arrest her and ordered that the betting slips, and the evidence found in the kitchen be suppressed. At a subsequent hearing before the Liquor Authority, that court order was brought to the attention of the hearing examiner but the items “ suppressed ” were, nevertheless, received in evidence. The Authority, on the strength of such proof, decided that the petitioner violated the Alcoholic Beverage Control Law (§ 106, subd. 6) —in that she suffered or permitted gambling on the premises — suspended her license for 10 days and imposed a bond claim in the penal sum of $1,000. The petitioner brought this article 78 proceeding to review the determination, and a divided Appellate Division annulled the Authority’s order on the ground that it was based upon evidence which had already been found to be illegally obtained.
Although all of the arguments raised on this appeal have already been considered in connection with the other cases, there is one factual difference in the present case which merits *662 further discussion. In La Pewta, the search and seizure could only have been sustained if the search warrant was valid. Thus, the earlier court decision, invalidating the warrant and the ex parte eavesdropping order upon which it was based, rendered the unlawfulness of the search self-evident. In the present case, however, some of the evidence was obtained pursuant to a search which was incidental to an arrest and, hence, did not require prior judicial sanction. Nevertheless, the Authority was not permitted to disregard a court determination (in the criminal case) that the evidence was, in fact, the fruit of an illegal search and seizure. The Authority has given no adequate reason why it should be allowed to re-examine the issue of the legality of a search after a court has already decided the question. It merely asserts that it has no association with the District Attorney’s Office and thus should not be concluded by a decision in a case in which it was not a party. Although the two agencies may be treated, for other purposes, as independent parties, this can hardly be the case where they are both seeking to use the same police officials as their agents to gather evidence. If the search and seizure was unconstitutional to the extent that it was performed for the benefit of the prosecutor, the same act could hardly be considered lawful for the Authority’s purposes. Since the facts and the issues are the same, the court’s decision on the motion to suppress that the search and seizure was illegal should be determinative of the issue. Such a decision is, of course, reviewable through the normal appellate process but neither the administrative hearing nor an action under article 78 to review it constitutes an appropriate proceeding to pass upon the propriety of a judicial decision which has never been directly challenged.
In sum, in each of these three cases, the evidence relied upon to support the Authority’s determination was found to have been obtained in violation of the petitioner’s Fourth Amendment rights. The logic of the Mapp rule, which requires the exclusion of such evidence in order to deter State officials from engaging in unlawful searches and seizures, applies equally whether the evidence is sought to be used in a criminal trial or on an administrative hearing. There can be no justification for any State agency, charged with enforcement of the law, to rely, in fulfilling *663 its function, upon the unlawful and unconstitutional acts of its agents.
In each case, the order appealed from should he affirmed, with costs.

. We note, however, that, although the Alcoholic Beverage Control Law is essentially a remedial and regulatory statute, the violation of any of its provisions is punishable as a misdemeanor (Alcoholic Beverage Control Law, § 130). Moreover, in addition to its power to revoke, suspend or cancel licenses, which might be considered to be purely administrative remedies (§ 118), the Authority may also recover a bond claim, in an amount which is specifically delineated by statute as a “penal sum” (§ 112). Indeed, this purely “penal” sanction was actually imposed in two of the three eases presently before us. (See Matter of Finn’s Liq. Shop v. State Liq. Auth., infra; Matter of Malik v. State Liq. Auth., infra.)

. Although the hearing officer ruled that he lacked the jurisdiction to pass upon the constitutional question — a conclusion with which we agree (see, infra, p. 660, n. 5; p. 662) — the circumstances of the search were fully explored in the record and the question was adequately preserved for review in the article 78 proceeding.

. Although subdivision 7 of section 17 of the Alcoholic Beverage Control Law appears to give the Authority the right to inspect “ any premises where alcoholic beverages are manufactured or sold”, subdivision 15 of section 105, which specifically governs a licensee to sell for consumption off the premises, requires only that “ boohs and records ” be made available for inspection. In contrast, subdivision 15 of section 106, governing licensees who sell for “ on-premises consumption ”, expressly grants the right to inspect the “ licensed premises ”.

. In point of fact, although the Authority’s hearing officer declined to suppress the evidence, he recognized that the search in this ease far exceeded the scope of the normal administrative inspection, stating that he was “ flabbergasted that this Investigator should go into property and search a coat, whether it is on a hanger or on a person’s back * * ”, without permission or without color of right or without a search warrant”.

. In this regard, it is interesting to compare the Authority’s position in the present case with the view expressed by the hearing officer in the Finn’s Liquor Shop ease. In Finn’s Liquor Shop — which was located in Manhattan — the hearing officer declined to pass upon the licensee’s request to suppress the evidence, observing that, as a mere administrative official, he lacked the power to make a determination of the constitutional question. He suggested that the licensee apply to the Supreme Court for an order to suppress, with which he would then comply. In the present case — involving a hotel in Syracuse — the court granted the requisite suppression order but the Authority refused to accord it any weight.