[Civ. No. 39546. Second Dist., Div. Three. Jan. 4, 1974.]

GOVERNING BOARD OF THE MOUNTAIN VIEW SCHOOL DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Respondent, v. FRANK HAMILTON METCALF, Defendant and Appellant.

## Counsel

Warren, Adell & Miller, Hirsch Adell and Marylove Maloney Lee for Defendant and Appellant.

John D. Maharg, County Counsel, and Audrey Oliver, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**COBEY, J.**—Defendant, Frank Hamilton Metcalf, appeals from a judgment declaring that the Governing Board of the Mountain View School District had sufficient cause to place him on compulsory leave of absence and thereafter to dismiss him on the grounds of immoral conduct and evident unfitness for service.

Metcalf, a sixth grade probationary teacher, was convicted of engaging in an act of prostitution (lewd act between persons for money or other consideration—Pen. Code, § 647, subd. (b)) on evidence the police obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 19 of the California Constitution. (*People v. Metcalf*, 22 Cal.App.3d 20 [98 Cal.Rptr. 925], approved in *People v. Triggs*, 8 Cal.3d 884, 888, 893-894 [106 Cal.Rptr. 408, 506 P.2d 232].) More specifically, Metcalf engaged in an act of oral copulation early one summer afternoon in a doorless toilet stall in a public restroom in a downtown department store. This incident gave rise to the statutory proceeding before us.

Metcalf contends that his objection on constitutional grounds to the testimony of one of the arresting officers at the trial of the dismissal proceeding, detailing this incident, should have been sustained and that, in any event, the conduct in which he engaged was neither immoral nor did it evince unfitness to serve further as an elementary public school teacher.[1]

Metcalf's first contention squarely poses the issue of whether the exclusonary rule that has long obtained in criminal trials in this state (see *People v. Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]) should be extended to civil disciplinary trials of this character. The exclusionary rule has long been a part of both federal and state constitutional procedural due process in criminal cases. (See *Mapp v. Ohio* (1961) 367 U.S. 643, 657 [6 L.Ed.2d 1081, 1091, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People v. Privett*, 55 Cal.2d 698, 703, 704-705 [12 Cal.Rptr. 874, 361 P.2d 602].) There appears to be no holding in California regarding whether the exclusionary rule applies in proceedings to dismiss a professional. (See *Elder v. Bd. of Medical Examiners*, 241 Cal.App.2d 246, 260 [50 Cal.Rptr.

---

[1]Metcalf also claims that the trial court's mistaken views of the issues before it prevented Metcalf from receiving a fair trial. The claim is incorrect. The trial court correctly identified the issues in the statutory proceeding before it as being whether the board's charges against Metcalf were true and whether, if true, they constituted sufficient grounds for a dismissal. (See Ed. Code, § 13412, as it existed before its amendment in 1971, Stats. 1959, ch. 2, p. 944.)

304], U.S. cert. den. in 385 U.S. 1001 [17 L.Ed.2d 541, 87 S.Ct. 701]; *Pierce* v. *Board of Nursing etc. Registration,* 255 Cal.App.2d 463, 466 [63 Cal.Rptr. 107].)[2]

There also seems to be a paucity of authority nationwide as to whether the exclusionary rule is a part of federal and state constitutional procedural due process in civil actions generally. At common law the general rule was to the contrary. The fact that evidence had been improperly obtained did not prevent its admission. (See Annot., *supra,* 5 A.L.R.3d 670, 672.) Nevertheless, the little authority that does exist is divided on the question of admissibility. *(Id.,* pp. 676-680.)

In California our Supreme Court, however, in the case of *In re Martinez,* 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], dealt with a similar, though not identical, issue. This was whether the Adult Authority in deciding whether to revoke an individual's parole might consider evidence that had been obtained by government officials in violation of both the Fourth and Fifth Amendments to the United States Constitution. *(Id.,* p. 646.) The touchstone of this opinion appears to be the test enunciated in *People* v. *Moore,* 69 Cal.2d 674, 681 [72 Cal.Rptr. 800, 446 P.2d 800], that whether any particular rule of criminal procedure should be applied in another type of proceeding depends upon a consideration of the relationship of the policy underlying the rule to that proceeding. ██ Generally speaking, the policy underlying the exclusionary rule has two aspects. The first and primary one in California is to deter government officials from lawless conduct by denying them a reward for such conduct. (See *People* v. *Cahan, supra,* 44 Cal.2d 434, 445, 449.) The secondary one is to preserve the integrity of the judicial process by keeping it free of the taint of the use therein of improperly obtained evidence.

██ There can be no doubt but that the second aspect of the policy underlying the exclusionary rule obtains in both civil and criminal cases. (See Note, *Constitutional Exclusion of Evidence in Civil Litigation* (1969) 55 Va.L.Rev. 1484, 1488.) There is doubt, though, whether the first and primary reason for the rule exists to any appreciable degree in civil cases. The police in making investigations of suspected criminal activity are, we surmise, generally completely unaware of any consequences of success in their investigative efforts other than the subsequent criminal prosecution of the suspected offender. It was for this reason and also in

---

[2]We do not regard the forfeiture of property cases as persuasive since this once used proceeding, although labeled civil, was actually criminal in nature. (See *Plymouth Sedan* v. *Pennsylvania* (1965) 380 U.S. 693, 697 [14 L.Ed.2d 170, 173, 85 S.Ct. 1246]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96-97 [41 Cal. Rptr. 290, 396 P.2d 706]; Annot. (1966) 5 A.L.R.3d 670, 680.)

recognition of the Adult Authority's great responsibility in protecting society from known highly dangerous persons that our Supreme Court did not extend the exclusionary rule to administrative proceedings to revoke parole. (*Martinez, supra,* pp. 649-650.)

It is true that in *Martinez* our Supreme Court carefully pointed out that it was not intimating that the exclusionary rule was not applicable to administrative proceedings generally. But, as the court did in *Martinez,* in deciding whether the exclusionary rule should apply to the dismissal proceeding before us, we must now consider the purpose of the statute authorizing dismissal of public school teachers for the primary reason involved in this case—that of immoral conduct.

Education Code section 13556.5, provides that "Each teacher shall endeavor to impress upon the minds of the pupils [among other things] the principles of morality . . . and to instruct them in . . . morals . . . ." The best type of instruction is by personal example. A teacher in the public school system is regarded by his pupils as an exemplar whose words and conduct are apt to be emulated by his pupils. (See *Board of Education* v. *Swan,* 41 Cal.2d 546, 552 [261 P.2d 261], overruled on a different point in *Bekiaris* v. *Board of Education,* 6 Cal.3d 575, 588 [100 Cal.Rptr. 16, 493 P.2d 480]; *Pettit* v. *State Board of Education,* 10 Cal.3d 29, 36 [109 Cal.Rptr. 665, 513 P.2d 889].)

The law has long recognized in many ways that children are entitled to special protection. This is particularly true during the process and period of their compulsory education. (See Ed. Code, § 12101.) In this case Metcalf was with his sixth grade pupils of both sexes generally from 8:30 a.m. to 3 p.m. each school day, and once or twice a week in season, on his own, he helped transport children to and from games of football, basketball and baseball. Children of the age of his pupils tend to idolize their teachers. Although the restroom incident involving Metcalf became known only to the district superintendent, his secretary and the principal of Metcalf's school, it was the principal's professional opinion that if the incident ever became known to Metcalf's fellow teachers, his pupils or to parents of those pupils, Metcalf would have been unable to function effectively thereafter as a teacher and his exemplar image would have been destroyed.

This expert opinion of Metcalf's principal in itself might be regarded as sufficient evidence of Metcalf's potential unfitness to teach at the school. (See *Pettit* v. *State Board of Education, supra,* 10 Cal.3d 29, 35-36.) Aside from this expert evidence, however, Metcalf's performance of

the act of oral copulation in a doorless toilet stall in a public restroom in a downtown department store during store hours indicated "a serious defect of moral character, normal prudence and good common sense" (*id.*, p. 35) and therefore evinced an unfitness to teach.

■ We recognize that like the criminal law generally a proceeding to dismiss a member of his profession from his position is punitive in character. This is particularly true in the instant case where the proceeding before us forms the basis for a subsequent revocation of Metcalf's teaching credential. (See Ed. Code, §§ 13441, 13202.) ■ But we are also mindful that the primary purpose of the proceeding before us is to protect Metcalf's pupils and other school children. ■ Accordingly, we hold that the exclusionary rule does not apply to this proceeding.[3]

Stated otherwise, we hold that the exclusionary rule, though a part of the constitutional procedural due process in this state in criminal cases, was not a part of such process in the proceeding before us. In other words, evidence of Metcalf's sexual misconduct that was inadmissible in his criminal prosecution was properly admitted in this dismissal proceeding.

In so holding we do not intimate whether the rule should be applied in a proceeding to discipline a member of the teaching profession on non-moral grounds or to proceedings to discipline members of professions generally.[4] Deprivation of one's opportunity to follow one's profession in this

---

[3] In our view the nonadministrative character of the proceeding is without consequence. (See *In re Martinez, supra,* 1 Cal.3d 641, 651, fn. 9.)

The New York Court of Appeals has held the exclusionary rule applicable in liquor license disciplinary proceedings, partially on the rationale of the government's involvement therein. (See *Finn's Liquor Shop, Inc.* v. *State Liquor Authority* (1969) 24 N.Y.2d 647 [301 N.Y.S.2d 584, 249 N.E.2d 440, 443].)

In this connection it is of interest to note that the application of the aforementioned search and seizure provisions of the United States and California Constitutions are not expressly limited to criminal cases as is the situation with respect to other constitutional rights. (See U.S. Const., Amends. V & VI; Cal. Const., art. I, § 13.) Both the United States Supreme Court and our Supreme Court have therefore held that administrative searches are subject to constitutional search and seizure limitations. (See *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 534 [18 L.Ed.2d 930, 938, 87 S.Ct. 1727]; *Parrish* v. *Civil Service Commission,* 66 Cal.2d 260, 262-263 [57 Cal.Rptr. 623, 425 P.2d 223].)

[4] The exclusionary rule has been applied in various types of civil proceedings: *Finn's Liquor Shop, Inc.* v. *State Liquor Authority, supra; Knoll Associates, Inc.* v. *F.T.C.* (7th Cir. 1968) 397 F.2d 530, 535 [F.T.C. investigation]; *Powell* v. *Zuckert* (1966) 366 F.2d 634, 640 [125 App.D.C. 55] [dismissal proceeding]; *Ex Parte Jackson* (D.Mont. 1920) 263 F. 110, 112-113; appeal dismissed in *Andrews* v. *Jackson* (9th Cir. 1920) 267 F. 1022 [deportation proceeding]; *United States* v. *Blank* (N.D.Ohio 1966) 261 F.Supp. 180, 182 [income tax assessment proceeding];

state may be a much more severe punishment for a criminal offense than anything the criminal law imposes. (Cf. *Bixby* v. *Pierno,* 4 Cal.3d 130, 144-145 [93 Cal.Rptr. 234, 481 P.2d 242].)

The judgment is affirmed.

Ford, P. J., and Allport, J., concurred.

---

*Hinchcliffe* v. *Clarke* (N.D.Ohio 1963)   230 F.Supp. 91, 100-102 [same]; *Carson* v. *State* (1965) 221 Ga. 299 [144 S.E.2d 384, 386] [gambling abatement proceeding]; *Carlisle* v. *State* (1964) 276 Ala. 436 [163 So.2d 596, 598] [gambling license proceeding].