157 N.J. Super. 9 (1978)
384 A.2d 225
CITY OF NEW BRUNSWICK, PLAINTIFF,
v.
RONALD SPEIGHTS, DEFENDANT.
Superior Court of New Jersey, Middlesex County Court, Criminal Division.
February 14, 1978.
*11 Mr. Michael R. Justin for defendant (Messrs. Rodriguez, Justin & Jess, attorneys).
Mr. Joseph E. Sadofski, Assistant City Attorney, for plaintiff (Mr. Gilbert L. Nelson, City Attorney).
ROCKOFF, J.C.C.
This opinion is addressed to a motion to suppress evidence filed by Ronald Speights pursuant to R. 3:5-7. Speights seeks to have certain evidence declared inadmissible at an anticipated Department of Civil Service *12 disciplinary action in which Speights can be sanctioned by permanent removal from his position as a police officer with the City of New Brunswick as well as loss of back pay from the date of his initial suspension, December 19, 1975. This motion reveals a series of novel questions of constitutional dimension which require discussion and disposition.
Speights has previously been convicted in a federal court criminal proceeding involving the charge of illegal possession of an unregistered sawed-off shotgun. On appeal, United States v. Speights, 557 F.2d 362 (3 Cir.1977), the court reversed defendant's conviction and remanded, holding in part that criminal evidence (i.e., the shotgun) was improperly admitted at the trial in violation of defendant's Fourth Amendment rights, and that the Federal District Court's denial of defendant's motion to suppress was reversible error.
Subsequent to the termination of the aforementioned criminal proceeding Speights received notice of the presently pending disciplinary hearing pursuant to N.J.S.A. 11:22-38 and Rule 4:1-16.8 of the Civil Service Rules of the New Jersey Administrative Code. Speights is therein charged with threatening to take a life (N.J.S.A. 2A:113-8) breaking and entering with an intention to steal (N.J.S.A. 2A:194-1), larceny over $500 (N.J.S.A. 2A:119-2) and illegal possession of a sawed-off shotgun (N.J.S.A. 2A:151-16). It is clear from the record that no administrative determination has been made and no hearing has yet been conducted.
Petitioner argues that the penal nature of the administrative proceeding requires the Middlesex County Court, Criminal Division, to hear this motion. He further argues that since the evidence to be required at the hearing is the same evidence suppressed by the federal court in the prior criminal action, this evidence must be suppressed by this court and its use at the hearing barred to assure him the continuing protection of the Fourth and Fourteenth Amendments of the Federal Constitution as made applicable to the states by the litany of cases commencing with Mapp v. *13 Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
In support of his arguments Speights points to the language of R. 3:5-7 of our Rules of Courts:
* * * a person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence obtained may be used against him in penal proceedings, may apply only to the Superior Court or County court of the county in which the evidence was obtained to suppress the evidence * * * [Emphasis supplied]
He thus asserts that this court is the only forum in which his arguments for suppression may be heard because of the "penal" consequences of the disciplinary hearing.
Before resolving the issue of whether petitioner's arguments misconstrue the scope of the Rules and the nature of the proceeding in which a motion to suppress may properly be brought, this court is compelled to address itself to the novel question raised herein, to wit: Does the exclusionary rule of the Fourth and Fourteenth Amendments apply to an administrative hearing of this type? Also of novel import in New Jersey is the question of whether evidence is admissible at a state civil-administrative hearing when the same evidence was excluded in a prior federal criminal proceeding.
The applicability of the exclusionary rule to civil proceedings has evoked enormous controversy. See Annotation, 5 A.L.R.3d 670. The controversy is in part due to the relaxed rules of evidence applicable to administrative proceedings in general, as well as the paucity of cases dealing with the issue. 2 Am. Jur.2d, Administrative Law, § 380 (1962), McCormick, Evidence, § 168 at p. 370-71 (1972). Nevertheless, it is apparent that those jurisdictions which have been faced with this question have based their decisions on two factors warranting analysis herein: (1) the deterrent policy of the exclusionary rule and (2) the nature of the penalty to be imposed.
*14 The guarantees against unreasonable searches and seizures embodied in the Fourth Amendment exclusionary rule are applicable to law enforcement and government officials seeking to enforce criminal statutes. Mapp v. Ohio, supra. The Supreme Court has established that the prime purpose of the exclusionary rule is to deter unlawful governmental conduct. United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). See also, United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). Although it has been held that state courts can impose higher standards of conduct in preserving the guarantees of the rule by way of interpretation of state constitutions, Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); State v. Johnson, 68 N.J. 349 (1975), the policy of the rule as enumerated by the Supreme Court is no different under state law. State v. DeSimone, 60 N.J. 319 (1972); State v. Cymerman, 135 N.J. Super. 591 (Law Div. 1975); State v. Droutman, 143 N.J. Super. 322 (Law Div. 1976).
The rule is calculated to prevent, not to repair. Its purpose is to deter  to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it. [Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960)]
An extension of the policy of the exclusionary rule to the realm of a civil proceeding no doubt derives from the seminal case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), where the rule was held applicable to a civil forfeiture of property. However, evolution of the rule has been one of limitation rather than growth.
Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served * * * [Calandra, supra, 414 U.S. at 348, 94 S.Ct. at 620]
*15 It is therefore necessary, in line with the above authority, to analyze whether the policy of the exclusionary rule will be efficaciously served by its application to a civil disciplinary hearing. The problem in the instant matter becomes more complex because the evidence in question herein was not seized for the immediate scrutiny of the administrative tribunal or by administrative agents. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Rather, it is sought to be excluded from a state civil proceeding because it was suppressed at a prior federal criminal proceeding.
In United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court held that exclusion from federal tax proceedings of evidence unlawfully seized by a state law enforcement officer was unjustified in light of the overriding policy limitations of the exclusionary rule. The court reasoned that because this was an "intersovereign" matter, the deterrent effect of exclusion of relevant evidence was so weakened and reduced that to "punish" the law enforcement officer by removing the evidence from a civil suit in a different sovereign would violate this policy. The court found that exclusion of the evidence in the state criminal proceeding adequately satisfied the policy of the exclusionary rule. Extension of the rule to the civil matter was held "an unjustifiably drastic action by the courts in the pursuit of what is an undesired and undesirable supervisory role over police officers." 428 U.S. at 458, 96 S.Ct. at 3034. The court limited its holding to circumstances involving said "intersovereign" violations. 428 U.S. at 456, n. 31, 96 S.Ct. 3021.
A second factor applied by some courts that have had to deal with civil matters where the exclusionary rule was considered applicable was the nature of the sanction to be imposed. Although termination of employment proceedings are clearly "civil" in form, In re Darcy, 114 N.J. Super. 454 (App. Div. 1971); Sabia v. Elizabeth, 132 N.J. Super. 6 (App. Div. 1975); Kelly v. Sterr, 119 N.J. *16 Super. 272 (App. Div. 1972), aff'd 62 N.J. 105 (1973), cert. den. 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973), the penalty to be imposed is a factor which may require a finding that the proceeding is sufficiently "quasi-criminal" to justify the application of certain criminal procedures. Often this finding presupposes a determination by the court as to whether the administrative proceeding is "penal" as opposed to "regulatory." McCormick, Evidence, § 167 at 370-71 (1972); 2 Am. Jur.2d, Administrative Law, § 380, 381 (1962). A court should consider whether the sanction involves an affirmative disability or restraint, whether the sanction is historically regarded as punishment, whether a finding of scienter is required, whether the imposition of the sanction will promote the aims of punishment  retribution and deterrence  and whether the behavior to which it applies is already a crime. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-9, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (deportation proceeding).
An analysis of the few cases nationwide on the subject is valuable to appreciate the state of flux in which the law on this subject now wanders in light of the foregoing factors.
Federal courts are split on the applicability of the exclusionary rule to civil-administrative proceedings. In Compton v. United States, 334 F.2d 212 (4 Cir.1964), evidence unlawfully seized by state law enforcement agents was sought to be admitted at a subsequent federal tax assessment proceeding brought by petitioner. The court held that the admission of the evidence did not affect the presumption of validity derived from a civil court determination. Similarly, in United States v. Paepke, 550 F.2d 385 (7 Cir.1977), the court held evidence illegally seized in a state criminal narcotics proceeding admissible in a subsequent tax fraud prosecution case in federal court. The policy of the exclusionary rule was held inapplicable when defendant himself had initiated the action by failing to properly file a federal income tax return. In NLRB v. South Bay Daily Breeze, 415 F.2d 360 (9 Cir.1969), cert. den. 397 U.S. 915, 90 *17 S.Ct. 919, 25 L.Ed.2d 96 (1970), the exclusionary rule was held inappropriate to a labor relations matter. However, in that case the alleged illegal search and seizure was conducted by a private employee as opposed to government officials. See also, Honeycutt v. Aetna Ins. Co., 510 F.2d 340 (7 Cir.1975), cert. den. 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975) (action on an insurance policy). The rule has also been held inapplicable to a subsequent sentence hearing, United States v. Schipani, 435 F.2d 26 (2 Cir.1970), cert. den. 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971), and to a collateral habeas corpus review of a conviction, Zagarino v. West, 422 F. Supp. 812 (E.D.N.Y. 1976), because the evidence was deemed reliable and necessary to an adequate review of a criminal proceeding even though held inadmissible in a prior criminal proceeding. A Merchant Marine disciplinary hearing was held to be "civil" in nature as a matter of policy (following United States v. Janis, supra) even though state police officers had arguably violated a cadet's Fourth Amendment rights in Ekelund v. Sec. of Commerce, 418 F. Supp. 102 (E.D.N.Y. 1976).
On the other hand, there are a growing number of federal courts that have excluded evidence in civil proceedings because of Fourth Amendment violations. In One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Supreme Court held that although a forfeiture proceeding is civil in form, it is clearly criminal in nature, justifying the application of the exclusionary rule. In Powell v. Zuchert, 125 U.S. App. D.C. 55, 366 F.2d 634 (D.C. Cir.1966), evidence was held inadmissible in a military discharge proceeding where the evidence was illegally seized by military authorities. The court analogized the sanction to one of criminal magnitude. A Federal Trade Commission sanction for a trade violation was held to be quasi-criminal and thus justification for application of the Fourth Amendment in Knoll Associates v. FTC, 397 F.2d 530 (7 Cir.1968). Similarly, *18 in United States v. Blank, 261 F. Supp. 180 (N.D. Ohio 1966), the court held illegally seized evidence inadmissible in a civil tax proceeding where the Federal Government had a choice as to whether to institute civil or criminal proceedings against the taxpayer. In Pizzarello v. United States, 408 F.2d 579 (2 Cir.1969), cert. den. 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969), the court excluded illegally seized evidence in a tax jeopardy assessment proceeding, finding that absent an exclusionary rule, the Government would be free to undertake unreasonable searches and seizures in all civil cases without the possibility of unfavorable consequences. It is clear that this "intrasovereign" proceeding involved the same policy reasoning as Janis, supra, and found insufficient "attenuation" to justify a nonextension of the rule. See also, Berkowitz v. United States, 340 F.2d 168 (1 Cir.1965) (forfeiture proceeding); District of Columbia v. Little, 85 U.S. App. D.C. 242, 178 F.2d 13 (D.C. Cir.1949), aff'd on other grounds 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950) (housing code violations); Rogers v. United States, 97 F.2d 691 (1 Cir.1938) (import duty collection); United States v. Stonehill, 274 F. Supp. 420 (S.D. Cal. 1967), aff'd 405 F. 2d 738 (9 Cir.1968), cert. den. 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969) (enforcement of tax liens); United States v. One 1963 Cadillac Hardtop, 220 F. Supp. 841 (E.D. Wis. 1963) (forfeiture).
State courts have also extended the exclusionary rule to proceedings which are "civil" in form. In J.E.G. v. C.J.E., 360 N.E.2d 1030 (Ind. Ct. App. 1977), the court held that the exclusionary rule applies to a paternity action, noting the consequences of this noncriminal proceeding. The New York Court of Appeals has held that all of the reasons for application of the exclusionary rule in criminal proceedings apply equally to administrative proceedings involving penalties, forfeitures or other sanctions for the violation of law or regulation. Finns' Liquor Shop v. State Liquor Authority, 24 N.Y.2d 647, 301 *19 N.Y.S.2d 584, 249 N.E.2d 440 (1968), cert. den. 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969) (liquor license revocation proceeding). See also, Irizarry v. New York, 79 Misc.2d 346, 357 N.Y.S.2d 756 (City Civ. Ct. 1974) (malicious prosecution).[1]
California courts have also addressed this issue, focusing on the nature of the civil-administrative proceeding as the key. In People v. Moore, 69 Cal.2d 674, 72 Cal. Rptr. 800, 446 P.2d 800 (Sup. Ct. 1968), overruled on other grounds People v. Thomas, 19 Cal.3d 630, 139 Cal. Rptr. 594, 566 P.2d 228 (Sup. Ct. 1977), the court held the exclusionary rule applicable to a narcotic commitment proceeding. The court rejected the assertion that the narcotics addition laws are rehabilitative, an assertion which would have nullified the applicability of the rule if adopted. Using the following language, the Moore court found the proceeding to have sufficient criminal overtones:
* * * But our penal system seeks rehabilitation as well as penalty; our administrative enforcement of housing laws may benefit the owner, and resident as well as the neighborhood; and the benefit of the narcotic addict furnishes no basis to ignore the fundamental guarantees against unreasonable searches and seizures. Accordingly, police officers who violate the fundamental guarantees in order to apprehend and obtain commitment of narcotic addicts are no less guilty of violating the basic law of the land than officers or other governmental officials who violate the Fourth & Fourteenth Amendments for the purpose of the apprehension and conviction of criminal offenders or violators of the health and safety laws. [69 Cal.2d at 680, 72 Cal. Rptr. at 804, 446 P.2d at 804]
But in an apparent contra decision, Governing Bd. Mountain View School Dist. v. Metcalf, 36 Cal. App.3d 546, *20 111 Cal. Rptr. 724 (D. Ct. App. 1974), the court held the rule inapplicable to a teacher's disciplinary hearing involving allegations of immoral conduct. The court left open the question of whether the rule should be held to apply to disciplinary hearings generally. In so doing the court indicated:
Deprivation of one's opportunity to follow one's profession in this state may be a much more severe punishment for a criminal offense than anything the criminal law imposes. [36 Cal. App. 3d at 551-552, 111 Cal. Rptr. at 728]
Similarly, in Rinderknecht v. Maricopa Cty. Employees System, 21 Ariz. App. 419, 520 P.2d 332, vac. 111 Ariz. 174, 526 P.2d 713 (1974) (Ct. App. 1974), the court held that a proceeding to discharge a deputy sheriff had a sufficient quasi-criminal nature to warrant application of the exclusionary rule. See also, Kassner v. Fremont Mutual Ins. Co., 47 Mich. App. 264, 209 N.W.2d 490 (Ct. App. 1973) (action on an insurance policy). Contra, Brundage v. Wilkins, 121 Ga. App. 652, 175 S.E.2d 108 (Ct. App. 1970) (motor vehicle property damage proceeding).
In Del Presto v. Del Presto, 97 N.J. Super. 446 (App. Div. 1967), the court held the exclusionary rule inapplicable to a civil divorce proceeding where the alleged illegal search and seizure was conducted by private individuals as opposed to government officials. The court refused to decide the question of whether the Fourth Amendment would apply in other circumstances. It is apparent that a New Jersey court has yet to resolve this issue.
This court queries as to whether the anticipated administrative disciplinary hearing in the instant case is sufficiently attenuated so as to deny petitioner the application of the exclusionary rule. The foreseeability of a subsequent disciplinary hearing directed at a police officer charged with criminal violations may be logically apparent at the time of the search and seizure. The foreseeability is no less striking because the criminal charges have been adjudicated *21 before a federal court and are subsequently sought to be used in a state administrative proceeding. Therefore, the policy of deterrence against unlawful governmental infringement of the Fourth and Fourteenth Amendments may be a factor in the instant matter. It is abundantly clear that the application of the rule can be justified by an analysis of the sanctions available to the administrative tribunal. A court may find that the loss of a police officer's position with a city is sufficiently severe and carries with it such penal and quasi-criminal overtones as may require the consideration by a court of the applicability of the Fourth and Fourteenth Amendments to this proceeding. Therefore, it is essential that at some stage of these proceedings the protection of the exclusionary rule be reviewed and appropriately applied or rejected on the merits.
This finding in no way requires that the administrative tribunal be estopped from considering the evidence heretofore suppressed by the federal court, the opinion expressed in Finn, supra, notwithstanding. It is clear that the doctrine of collateral estoppel applies when an issue of ultimate fact has once been determined by a valid and final judgment. In such a case that issue cannot again be litigated between the same parties in any future lawsuit involving a different cause of action Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); United States v. Pappas, 445 F.2d 1194 (3 Cir.1971), cert. den. 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971); State v. Cormier, 46 N.J. 494 (1966); Moore, Federal Practice (2 ed. 1974), § 0.441.
However, it is also clear that a party will not be bound by the prior determination if it was not a party or in privity to a party bound by the prior determination. See Rosenthal Jewelry Corp. v. Zale Corp., 323 F. Supp. 1234 (S.D.N.Y. 1971); Board of Directors v. First National Bank, 33 N.J. 456 (1960). The effect of this rule is even more striking when the party herein against whom the application of collateral estoppel may arguably apply, the *22 City of New Brunswick, is a sovereign entirely apart from the sovereign in the prior criminal proceeding, the United States. Thus, it is readily apparent that two different sovereigns are involved, with no indication before the court of any privity of relationship between the two.
Moreover, each sovereign involved in this matter is concerned with enforcing different penalties with different standards of proof. By definition, it cannot be said that the City of New Brunswick must be estopped by the prior criminal determination as a matter of law.[2]
Notwithstanding the court's analysis of issues heretofore raised, this court finds as a general proposition of law that it has no jurisdiction to adjudicate a criminal motion directed at suppression of evidence in an administrative proceeding since the County Court is limited by law to cognizance of "crimes and offenses" of an indictable nature for which it shall have authority to punish all persons convicted thereof N.J.S.A. 2A:3-4. No criminal charges or proceedings are pending against Speights at this time.
Although, as discussed supra, the punishment involved herein is admittedly grave and severe and involves a threat to Speights which may very well be as serious as the consequences of a criminal conviction, this is not a "criminal proceeding" in the sense that Part III of the Rules Governing the Courts contemplate for the invocation of a motion to suppress. See R. 3:1-1. A disciplinary proceeding of this type is civil in form, as opposed to criminal. Sabia v. Elizabeth, supra. Thus, the proceeding to suppress evidence is not applicable.
*23 In Kelly v. Sterr, supra, the court held that
* * * an administrative hearing of this type is not a criminal proceeding * * * It is nothing more than an inquiry into appellant's actions to determine whether he violated departmental regulations and, if he did, to impose appropriate sanctions. [119 N.J. Super. at 274]
Therefore, this court rejects the expansive reading petitioner seeks to give to R. 3:5-7 and specifically to the interpretation of the term "penal" for purposes of fixing jurisdiction.
Petitioner has clearly failed to exhaust the administrative avenues of review open to him. Initially, Speights has yet to be permanently removed by this appointing authority, the City of New Brunswick. Secondly, as a civil service employee he has a statutory right of review by the Civil Service Commission, N.J.S.A. 11:22-38, see also, New Jersey Administrative Code 4:1-16.10, and a right to a summary review by the Commission in the event that the removal is the result of an "illegal or unlawful action." N.J.S.A. 11:25-1. Furthermore, a review of removal proceedings is available by the courts through a proceeding in lieu of prerogative writs, N.J.S.A. 11:25-4; R. 4:69-1 et seq. See Wallace v. Bridgeton, 121 N.J. Super. 559 (Law Div. 1972). Should Speights choose to appeal to the Civil Service Commission and forego an action in lieu of prerogative writs, he still has the right of judicial review of the final determination of the administrative agency in the Appellate Division. R. 2:2-3.
Access to the courts for relief from administrative tribunals is barred when an applicant has failed to exhaust the administrative remedies available to him. State v. Harvin, 46 N.J. 151 (1965); Fletcher v. Newark, 143 N.J. Super. 210 (Law Div. 1976); East Brunswick Tp. Bd. of Ed. v. East Brunswick Tp. Council, 48 N.J. 94 (1966); Levin-Sagner-Orange v. Orange Rent Leveling Bd., 142 N.J. Super. 429 (Law Div. 1976), aff'd 147 N.J. Super. *24 303 (App. Div. 1977). It is apparent that administrative tribunals must be permitted to perform their functions without anticipatory interference by the courts in light of the competency of administrative tribunals to make findings of fact. East Paterson v. Civil Service Dept., 47 N.J. Super. 55 (App. Div. 1957); Woodside Homes, Inc. v. Morristown, 26 N.J. 529 (1958).
New Jersey case law strongly supports the requirement of exhaustion of remedies except in a limited number of circumstances: where there is no factual dispute and only a matter of law remains to be resolved, Fletcher v. Newark, supra, or if there is a need for prompt decision in the public interest, Jones v. East Windsor Reg. Bd. of Ed., 143 N.J. Super. 182 (Law Div. 1976), or if irreparable harm will otherwise result from denial of immediate judicial relief, Brunetti v. New Milford, 68 N.J. 576 (1975). In these instances a court could entertain an application for intervention in an administrative proceeding, but even then, only in the proper forum.
This court determines that factual questions remain which require administrative determination and that a review of the merits now would be premature. Roadway Express, Inc. v. Kingsley, 37 N.J. 136 (1962). Brunetti, supra. To be sure, no factual determination has yet been made which a court can review. Petitioner has failed to demonstrate any irreparable harm that may result as a practical matter by his having to proceed through administrative channels.
Accordingly, petitioner has failed to properly invoke the jurisdiction of this court by (1) improperly filing the motion to suppress and (2) failing to exhaust his administrative remedies.
The court further acknowledges that delay in the determination of petitioner's Fourth and Fourteenth Amendment rights by either the denial of jurisdiction or the requirement that he exhaust his administrative remedies before judicial review is not prejudicial. See In re Garber, *25 141 N.J. Super. 87 (App. Div. 1976), certif. den. 71 N.J. 494 (1976). Delay will not offend petitioner's right to procedural due process to which he is entitled.
Present day concepts of due process require simply that one be given a full opportunity to be heard at a `meaningful time and in a meaningful manner' before any official action is taken. [Avant Industries Ltd. v. Kelly, 127 N.J. Super. 550, 553 (App. Div. 1974)]
See also, Merry Heart Nurs. & Conv. Home v. Dougherty, 131 N.J. Super. 412 (App. Div. 1974). Kelly v. Sterr, supra; Davis, Administrative Law, § 8.08 at 548 (1958).
A post-termination hearing of any constitutional arguments or errors by the administrative tribunal herein clearly complies with Speights' right to due process, regardless of the classification of the nature of his interests affected.[3] Only at that stage is it proper for a court to hear the merits of petitioner's Fourth and Fourteenth Amendment arguments.
The motion is denied.
NOTES
[1] New York has even gone as far as to say that an administrative tribunal may be estopped from considering illegally seized evidence as adjudicated by a prior criminal court even if it was not a party to nor in privity with a state law enforcement boy in the prior action. Finns' Liquor Shop, supra, 24 N.Y.2d at 660-1, 301 N.Y.S.2d at 592-3, 249 N.E.2d at 445-446.
[2] As to whether the federal court ruling on the motion to suppress is a "final judgment" whereby the collateral estoppel rule would apply, such a determination is unnecessary for purposes of this opinion.
[3] Whether this court classifies the interest as a "property" right in his employment or a deprivation of "liberty" caused by the delay in exhaustion of administrative remedies, such classification does not affect that nature of the degree of due process required, nor is such classification necessary for the purposes of this decision. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Cunningham v. Civil Service Dep't, 69 N.J. 13 (1975); Endress v. Brookdale Community College, 144 N.J. Super. 109 (App. Div. 1976).