4

In the Matter of ROBERT DIZAK, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 22, 1979

### APPEARANCES OF COUNSEL

*Oscar J. Cohen* of counsel *(Nicholas C. Cooper,* attorney), for petitioner.

*Albert J. Brackley* for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Respondent was admitted to practice in 1970 in the Fourth Department. After a hearing before a panel of the Departmental Disciplinary Committee on three charges of professional misconduct, the matter comes to us on a motion to confirm the panel's findings. The notice specified: Charge 1: Professional misconduct and conduct involving fraud (Code of Professional

Responsibility, DR 1-102 [A] [4]) in that he possessed subway slugs and, on December 11, 1975, had used one to gain admission to the subway; Charge 2: Professional misconduct (DR 2-103 [B]) by paying one Litwin, not an attorney, $150 for recommending an annulment case to him; Charge 3: Professional misconduct and conduct involving fraud in accepting from Litwin 500 slugs in further consideration of the payment to him. The answer denied Charge 2 and Charge 3 and, as to Charge 1, admitted only that he had pleaded guilty to the violation of trespassing and paid a $25 fine. After hearing, the panel made findings sustaining all the charges and finding in addition that, when he testified before the Grand Jury, he attempted to mislead the body, and did the same in his testimony before the panel.

The Grand Jury minutes were furnished counsel to the committee by order of Supreme Court. Following respondent's arrest in the subway and the plea bargain made on that charge, the detectives involved, believing they were on the trail of a distributor of slugs, brought him to the District Attorney's attention. He was interviewed by the District Attorney and taken before the Grand Jury, where he waived immunity. Though he was badgered by the assistant there and continually interrupted, he managed to tell the jury that he had been approached in 1975 by Litwin who wanted to refer the annulment matter to him; that he agreed to give Litwin $150 out of his fee; that he made no other arrangement with him or anyone else to refer other cases; that Litwin gave him seven or so slugs; that he threw all away except one that he kept as a curiosity; that, in the morning rush hour, trying to catch a train and having no token but finding the slug in his pocket, he used it; that the case was disposed of as indicated; that, some days later Litwin called him on the phone and then made a hurried visit to his office because he was double parked, collected the cash, and, without any request, threw several bags of slugs on his desk and left; that he threw most away and brought the rest to the District Attorney's office; that he was not otherwise involved with slugs nor did he ever say that Litwin gave them to him as a "sweetener" for payment of the $150; that he never took the slugs to the police, being afraid of Litwin.

The Grand Jury transcript was used at the hearing. Counsel formally objected to its use and does so now. The only requirement for use of Grand Jury minutes is a Supreme Court order, and that was procured. Another objection was and is

made to use of a statement made to the District Attorney without *Miranda* warnings. (See *Matter of Finn's Liq. Store,* 24 NY2d 647.) Respondent was not in custody and did appear voluntarily, and could have left the prosecutor's office and indeed the Grand Jury any time he chose. He elected to try to explain. Were it not for these circumstances, his thesis for exclusion might be capable of being upheld.

Obviously, the case against respondent came from his own lips, and except for the added charge of attempt to mislead the panel and the Grand Jury, the findings are confirmed. In our view, he made no such attempt. His testimony, indeed, was explanatory and completely inculpatory, admitting the operative facts of the charges. We regard the activities herein described as improper and certainly unprofessional, but we do not consider that they were venal. However, viewing the evidence in its most favorable aspect, respondent displayed a lack of mature responsibility in both branches of the charges against him. Assuming, as we must on the evidence, that he became involved with the subway slugs on the first occasion without any improper intention, he should not have held onto even one of them out of curiosity or otherwise. Certainly, on the second occasion, assuming that they were dropped on his desk without opportunity to return them to the donor, he should then have taken them at once to the authorities as evidence of criminal activity. It appears to have been a stroke of good fortune that he did take the remaining slugs to the District Attorney's office. His use of the slug in the subway was manifestly improper but his explanation is understandable.

As to the other facet of his association with the man who sent him a client, the most inexperienced law student knows that it is unethical to pay a fee to a layman for bringing a client to him, so that even ignorance is not available as an excuse. As we have said, what is found here is immature irresponsibility which, hopefully, may be cured by education in the ethics of the profession he seeks to practice. He should not go unpunished but should suffer a period of suspension during which he may reflect upon his ways and proceed to educate himself in the manner we have indicated.

Respondent should be suspended from the practice of law for 18 months and until further order of the court.

KUPFERMAN, J. P., LUPIANO, EVANS, MARKEWICH and SANDLER, JJ., concur.

Respondent suspended from practice as an attorney and counselor at law in the State of New York for a period of 18 months, effective April 23, 1979.