553 A.2d 1281

**Melvin SHEETZ**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 142, Sept. Term, 1987.**

Court of Appeals of Maryland.

March 3, 1989.

Carol L. Rubin (Frank, Bernstein, Conaway & Goldman and Jack B. Rubin, all on brief), Baltimore, for appellant.

John S. Wood, Chief Sol. (Laurice D. Royal, Asst. Sol., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

■ In this case, Baltimore City police seized narcotics and related paraphernalia from city correctional officers. According to the District Court of Maryland sitting in Baltimore City, the police did so without probable cause and without a warrant.[1] The issue here is whether such evi-

---

1. In the absence of a District Court trial record indicating the rationale for suppressing the evidence, we must rely on Sheetz's uncontested description of the trial court's ruling.

dence, taken in violation of the fourth amendment, is admissible in a civil administrative discharge proceeding. As a matter of Maryland administrative law, we hold that such evidence is admissible unless obtained in bad faith. Because no finding was made as to whether the evidence, gathered in violation of the fourth amendment, was obtained in bad faith, we shall order this case remanded to the Baltimore City Civil Service Commission for that determination.

## I. The Facts

The Baltimore City Police Department informed Warden Paul Davis (Warden) and Deputy Warden Thomas Corcoran of the Baltimore City Jail that Correctional Officer Lieutenant Clifford Weems (Weems) was being investigated for possible trafficking in illegal drugs. After the Warden made a cursory investigation which neither confirmed nor dispelled the allegations, the police department informed him that it would continue to investigate Weems. However the Warden, according to the administrative hearing officer, "at no time requested the Police Department and/or Captain Newman to press the investigation against Lieutenant Weems."

On November 3, 1983, the police kept Weems' van under surveillance. They observed people going in and out of the vehicle, which was located across the street from the jail. Undercover Officer White testified that he walked by and smelled marijuana in the van. Without obtaining a warrant, the police arrested Weems, the petitioner Melvin Sheetz (Sheetz) and several other correctional officers who were in the van. In a search made during the arrest, the police discovered cocaine, marijuana and related drug paraphernalia.

Sheetz was charged with resisting arrest and possession of narcotics and related paraphernalia. The State dropped these charges when the District Court held that the procedure by which the evidence was obtained violated the fourth amendment, and the evidence was therefore inadmissible at

trial. The Warden then initiated a disciplinary proceeding against Sheetz and the other correctional officers. Correspondence indicates that the State's Attorney's Office had urged the Warden to follow through on his decision to press administrative charges after the State had dropped its own case against all the correctional officers except Weems.[2]

Relying on the illegally seized evidence, the Warden ruled that Sheetz had conducted himself in a manner "unbecoming of an employee of the City" and had therefore violated Baltimore City Civil Service Commission Rule 56(1)(f).[3] In a letter dated January 13, 1984, the Warden discharged Sheetz based on this finding. A Civil Service Commission representative heard the case, held that the exclusionary rule did not apply to civil administrative proceedings [4] and recommended that the Warden's decision be upheld. The commission approved the hearing officer's recommendation.

Arguing that the illegally obtained evidence should have been excluded, Sheetz filed an action for a Writ of Mandamus in the Circuit Court for Baltimore City against respon-

---

2. Following up on a recent telephone conversation with the Warden discussing the fact that the state would drop its criminal charges against the prison guards, the State's Attorney's Office wrote the following: "My understanding from you is that you intend to pursue administrative proceedings against some of these officers. I applaud that decision. . . . Since the [District] Court's ruling has no impact on administrative hearings, I urge you to pursue the administrative charges against these men." Letter from then State's Attorney Kurt L. Schmoke to Warden Paul J. Davis (Dec. 7, 1983). That letter was copied to Deputy Warden Corcoran and Acting Baltimore City Solicitor John Wood on December 9, 1983. Both men were present at Sheetz's disciplinary hearing before the Warden on January 11, 1984.

3. Baltimore City Civil Service Commission Rule 56(1)(f) states:
(1) The following are recognized by the Commission as sufficient causes for removal or discharge of an employee from the Classified Civil Service, although charges may be based upon causes other than those enumerated. . . .
(f) That the employee has committed acts while on or off duty which amount to conduct unbecoming to an employee of the City.

4. The hearing officer stated the following: "In the light of the clear weight of authority relating to the exclusionary rule, I conclude it has no applicability to this civil, administrative proceeding."

dent Mayor and City Council of Baltimore. The circuit court denied Sheetz's request. In affirming the agency ruling, the court held that the exclusionary rule does not apply in civil administrative disciplinary proceedings. The Court of Special Appeals affirmed based on a balancing test of the costs and benefits of employing the rule. *Sheetz v. City of Baltimore*, 72 Md.App. 51, 527 A.2d 787 (1987).

## II.

As a general matter, the federal exclusionary rule applies to criminal proceedings. However the Supreme Court has extended the rule to at least one civil proceeding in *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). There the Court held that illegally obtained contraband evidence could not be admitted in an automobile forfeiture case. Noting that the cost of forfeiture was quasi-punitive in nature and exceeded the cost of the criminal fines, the Court reasoned that "[i]t would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." *One Plymouth Sedan*, 380 U.S. at 701, 85 S.Ct. at 1251, 14 L.Ed.2d at 175. However since then, the Court has declined to extend the rule to other civil proceedings. *See United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (declining to apply the rule to federal tax proceedings where criminal evidence had been obtained by state police); *Immigration and Naturalization Serv. v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (refusing to apply the rule in the context of civil deportation proceedings).

This Court has itself considered the extension of the exclusionary rule in three civil proceedings. *See Chu v. Anne Arundel County*, 311 Md. 673, 537 A.2d 250 (1988) (proceeding for the return of records); *Chase v. State*, 309 Md. 224, 522 A.2d 1348 (1987) (probation revocation proceed-

ing); *Whitaker v. Prince George's County*, 307 Md. 368, 514 A.2d 4 (1986) (public nuisance action). Of these cases, *Chase* is most on point with the instant case.

There, we held that, "[i]n revocation of probation proceedings, the exclusionary rule does not apply to bar evidence illegally seized by the police from the probationer." *Id.* 309 Md. at 251, 522 A.2d at 1362. We concluded that society's need to obtain accurate information regarding criminals who may have been released on probation exceeds the marginal increase in deterrence of improper police searches and seizures to obtain such information. We emphasized that proceedings revoking probation are not punitive in nature, since punishment has previously been allocated by the sentencing judge.

However we established in *Chase* an exception to the admissibility of illegally obtained evidence: "when the officer has acted in bad faith and not as a reasonable officer would and should act in similar circumstances, the evidence should, in any event, be suppressed." 309 Md. at 253, 522 A.2d at 1362. The Court reasoned that "it would derogate due process of law to presume conclusively that in such cases the police officer acted in good faith." 309 Md. at 253, 522 A.2d at 1363. Thus "[e]vidence concerning the officer's conduct which would be sufficient to call upon the State to rebut is credible evidence indicating *prima facie* to the satisfaction of the hearing judge that the officer's actions were not in accord with reasonable law enforcement activities but were prompted by improper motives." 309 Md. at 254, 522 A.2d at 1363.

Emphasizing that there was no evidence that the officers were aware of the defendant's probationary status and that probable cause was a close call, we found that the warrantless search of the probationer in *Chase* was objectively reasonable. Given the lack of proof of bad faith, the evidence was admissible in the probation revocation hearing.

## III.

█ Because we find that the deterrent benefits of the fourth amendment exclusionary rule are minimal in the context of discharge proceedings, we find that the exclusionary rule does not generally apply in such cases. We explain.

Administrative discharge proceedings are typically designed to evaluate employees' actions as they relate to future job performance, rather than to punish employees for past wrongs.[5] *See Garrett v. Lehman,* 751 F.2d 997, 1002 (9th Cir.1985) ("The function of [military discharge] proceedings is to determine eligibility for further military service; not to punish for past wrongs."); *Governing Bd. of Mountain View Sch. Dist. v. Metcalf,* 36 Cal.App.3d 546, 111 Cal.Rptr. 724, 727 (1974) (holding that the primary purpose of discharging a teacher is to protect his students, rather than to punish the teacher).[6] The Baltimore City Charter regarding cause for discharge reflects this proclivity for basing discharge on job efficiency, rather than on retribution.[7] By contrast, criminal laws seek to punish parties for their past wrongs.

---

**5.** We express no opinion as to civil administrative proceedings involving employment which do not concern discharge.

**6.** *But see City of New Brunswick v. Speights,* 157 N.J.Super. 9, 384 A.2d 225, 231 (1978) (suggesting that discharge proceedings against a police officer may be sufficiently penal in nature to justify application of the exclusionary rule); *Powell v. Zuckert,* 366 F.2d 634, 640 (D.C.Cir.1966) (" 'It would seem wholly at odds with our traditions to allow the admission of evidence illegally seized by Government agents in discharge proceedings, which the Court has analogized to proceedings that involve the imposition of criminal sanctions.' "); *cf. Board of Selectmen of Framingham v. Municipal Ct. of Boston,* 373 Mass. 783, 369 N.E.2d 1145, 1147–48 (1978) (excluding as a matter of state law illegally obtained evidence against a police officer on the ground that " 'judicial integrity' [was] at stake in the sense that the government is seeking to take advantage of its own lawbreaking to *punish* the victim of that illegality.") (emphasis added); *Saylor v. United States,* 374 F.2d 894, 179 Ct.Cl. 151 (1967) (applying the exclusionary rule in discharge proceedings).

**7.** Section 118(a) of Article VII of the Baltimore City Charter states:

The police are responsible for punishing criminals by enforcing criminal laws. Thus they are not, as a general rule, primarily concerned with regulating the quality of employment at a particular governmental agency. Because their primary interest is not typically in discharge proceedings, the police are not especially tempted to violate the fourth amendment in order to obtain evidence for such proceedings. Therefore, in this context, the exclusionary rule, designed to deter such violations, is not particularly useful.[8] Because we find that the exclusionary rule offers only minimal deterrent benefits in this particular context, we conclude that the rule does not generally apply to administrative discharge proceedings.

■ However, as a matter of Maryland administrative law, we are unwilling to hold that such evidence is always admissible. Although discharge proceedings are not usually designed to be punitive and therefore do not fall within the scope of primary police interest, they may be manipulated to serve punishment purposes. In this context, the police deterrence gained from barring the admission of illegally obtained evidence is needed. We therefore hold

---

No person shall be discharged from the Classified Civil Service or be reduced in pay or position or suspended by the appointing officer for or on account of his political opinions or affiliations, or for refusing to contribute to any political fund or refusing to render any political service; but nothing in the provisions of the Charter relating to the Classified Civil Service shall forbid the removal, dismissal, reduction or suspension of any such officer or employee for any cause, other than those hereinbefore enumerated, which, in the opinion of the person authorized by law to remove or dismiss such officer or employee, may interfere with the efficient discharge of the duties of the position.

**8.** Not only are the benefits from deterrence generally minimal in discharge proceedings, the costs of applying the exclusionary rule are significant. "On the cost side there is the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs." *Lopez–Mendoza,* 468 U.S. at 1041, 104 S.Ct. at 3485, 82 L.Ed.2d at 787. In the context of governmental discharge proceedings, the cost of excluding evidence is often high, given the public services such employees perform.

that such evidence is inadmissible in civil administrative discharge proceedings where the defendant establishes that the police were improperly motivated to illegally seize evidence to benefit civil proceedings. *See generally Chase,* 309 Md. at 256, 522 A.2d at 1364 ("[T]he motives behind [the actions of the police] may be objectively determined.").

Although the following is not to be interpreted as an exclusive list, some of the factors which courts and commentators point to in considering the motivation behind an improper search and seizure include: 1) whether, at the time of the illegal search, the police were aware of the potential effect of using such evidence in civil proceedings; *see Chase,* 309 Md. 224, 522 A.2d 1348; *Whitaker,* 307 Md. at 383, 514 A.2d at 12; *see also City of New Brunswick v. Speights,* 157 N.J.Super 9, 384 A.2d at 231 ("The foreseeability of a subsequent disciplinary hearing directed at a police officer charged with criminal violations may be logically apparent at the time of the search and seizure."); *see generally* 1 W. LaFave, *Search and Seizure* § 1.7(e) at 162 (2d ed. 1987); *cf. Metcalf,* 36 Cal.App.3d 546, 111 Cal.Rptr. 724 (where police were unaware of government employee's status); 2) whether the severity of the consequences of civil proceedings roughly paralleled or exceeded that of the criminal proceedings; *Plymouth,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170; 3) whether a reasonable officer would have believed the search to be a proper one; *see Chase,* 309 Md. at 256, 522 A.2d at 1364 (noting that "whether there was probable cause for an arrest was a close call, at least arguable."); 4) whether there was an agreement between the police and another party to pursue the investigation which led to the improperly obtained evidence;[9] and 5) whether the police had a special interest in the case.

---

**9.** The fact that the State's Attorney's Office encouraged the Warden to pursue discharge proceedings against Sheetz and others after the evidence was seized obviously does not establish an intrasovereign agreement to conduct the prior search and seizure.

We note that the hearing officer below, in his thorough review of the case, touched on many of these issues. However he seemed to conclude that illegally obtained evidence is always admissible in civil discharge proceedings.[10] Because such evidence, where properly challenged, is inadmissible upon a finding of bad faith, we must remand for a new hearing in accordance with this opinion.

JUDGMENT THE COURT OF SPECIAL APPEALS VACATED AND THE CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT OF BALTIMORE CITY WITH DIRECTIONS TO REMAND TO THE BALTIMORE CITY CIVIL SERVICE COMMISSION FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO ABIDE THE RESULT.

---

10. In his opinion, the hearing officer wrote, "In light of the clear weight of authority relating to the exclusionary rule, I conclude it has no applicability to this civil, administrative proceeding. Therefore, I hereby deny the motion and overrule the objections [to admitting the illegally obtained evidence]."