Charles E. AHART and Gavin McWhirter, Complainants–Appellees,

and

State Personnel Board, Appellee,

v.

DEPARTMENT OF CORRECTIONS, Division of Adult Services, Buena Vista Correctional Facility, Respondent–Appellant.

No. 95CA1928.

Colorado Court of Appeals,
Div. II.

Aug. 22, 1996.

Rehearing Denied Oct. 3, 1996.

Certiorari Granted Aug. 18, 1997.

Carol M. Iten, Denver, for Complainants–Appellees.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, G. Charles Robertson, Assistant Attorney General, Denver, for Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, David A. Beckett, Assistant Attorney General, Denver, for Respondent–Appellant.

Opinion by Judge NEY.

Respondent, Department of Corrections (DOC), appeals the order of the State Personnel Board (Board) reinstating complainants, Charles E. Ahart and Gavin McWhirter, as corrections officers at DOC's Buena Vista Correctional Facility (BVCF). We conclude that the Board erred in suppressing evidence of the results of urinalysis testing, as well as evidence resulting therefrom, which revealed complainants' use of illegal drugs and formed the basis for their termination from DOC. Accordingly, we vacate the

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

order and remand for reconsideration of the termination order.

DOC has a formal policy of random drug testing of employees. Administrative Regulation 1150–4(7)(f). However, the actual practice followed by DOC is to conduct drug tests solely on the basis of reasonable suspicion. In November 1994, based upon information received from anonymous sources concerning complainants' off-duty use of illegal drugs, the warden of BVCF requested that complainants submit to a urinalysis test.

After privately consulting an attorney by telephone, complainants agreed to urinalysis testing. Complainants tested positive for marijuana and later, during a meeting with the warden concerning the test results, admitted to using marijuana. Consequently, complainants' employment was terminated effective November 28, 1994.

Complainants appealed their terminations and in April 1995, the terminations were upheld by an Administrative Law Judge (ALJ) who determined that DOC lacked reasonable suspicion to test complainants and that, therefore, testing had been violative of DOC's established policy and, impliedly, violative of complainants' Fourth Amendment rights. The ALJ concluded, however, that there was "no basis for exclusion of the evidence" obtained thereby or of complainants' admission of drug use which resulted from the unlawful test request.

■ The ALJ correctly noted that the general rule in a criminal proceeding is that evidence procured in violation of constitutional rights must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, the ALJ also properly recognized that in civil proceedings, the suppression of illegally seized evidence is not always required. *See United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

The ALJ considered complainants' daily contact with inmates in BVCF, a medium security correction facility, and their diminished expectation of privacy as corrections officers. And, in apparent reliance on *United States v. Janis, supra,* the ALJ determined that the social costs of exclusion of the evidence were outweighed by the social benefits of admission. The ALJ also considered the admitted drug use of complainants and concluded that DOC had established complainants' wilful misconduct and that, therefore, its termination of complainants' employment was for just cause and was not arbitrary, capricious, or contrary to rule or law.

Complainants successfully appealed the ALJ's order to the State Personnel Board (Board) which ordered complainants reinstated with backpay and benefits. The Board concurred in the determination of the ALJ that DOC lacked reasonable suspicion to test complainants but reversed the ALJ's decision not to exclude the evidence obtained through the urinalysis test. In concluding that the social benefits of excluding the evidence outweighed the costs, the Board focused on the intrasovereign nature of this action and reasoned that, for the exclusionary rule to have its intended effect of deterring illegal searches, the evidence obtained from the urinalysis test would have to be suppressed.

Examining the record without the excluded evidence, the Board determined that DOC had failed to establish that complainants had engaged in willful misconduct and, thus, concluded that complainants' termination was without just cause and was, therefore, arbitrary and capricious.

This appeal followed.

## I

DOC first asserts that complainants voluntarily consented to testing for use of illegal drugs and that, thus, the Board erred in treating the test as a search to which the protections of the Fourth Amendment attach. Our review of the record reveals that neither the ALJ nor the Board addressed the issue whether complainants' consent to the test was voluntary.

However, that issue was not clearly raised in the administrative proceeding and, in light of our resolution below of the issue of the applicability of the exclusionary rule, we conclude that we need not address it here.

## II

DOC next contends that the Board erred in applying the exclusionary rule to the results of complainants' urinalysis tests and their admissions concerning illegal drug use. We agree.

Both parties agree that the positions held by complainants were both safety- and security-sensitive. Complainant Ahart was the BVCF housing manager and was charged with supervising 100 prison staff members. Complainant McWhirter was a lead worker on his shift and a member of a special response team which required him to be on call at all times to respond to emergency situations at BVCF. Both Ahart and McWhirter had daily contact with inmates.

It is undisputed that complainants were not tested pursuant to DOC's formal policy of random drug testing of employees and we agree with the ALJ and the Board that the allegations of complainants' drug use did not rise to the level of reasonable suspicion as established by objective and credible evidence as required by *City & County of Denver v. Casados*, 862 P.2d 908 (Colo.1993) *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994).

Therefore, the issue before us is whether evidence obtained by DOC in violation of its own policy as well as complainants' Fourth Amendment rights, and evidence flowing therefrom, should be suppressed in a civil service disciplinary proceeding. We conclude, in reliance upon *United States v. Janis, supra, I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), and the reasoning contained in *Sheetz v. City of Baltimore*, 315 Md. 208, 553 A.2d 1281 (1989) that it should not.

The exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights by deterring future illegal police conduct. The determination of the applicability of the exclusionary rule beyond the context of a criminal prosecution is made by weighing the likely social benefits of excluding unlawfully seized evidence against the likely costs of exclusion. *United States v. Janis, supra.*

In *Janis*, a federal civil tax case, the Court analyzed the applicability of the exclusionary rule in a civil proceeding. The issue there was whether, in a civil proceeding, the exclusion of evidence which had been obtained unconstitutionally by state law enforcement officers in a state criminal investigation was required.

In determining whether the illegally-procured evidence should be excluded in the civil proceeding, the Court reasoned that the purpose of the exclusionary rule, to deter constitutional violations, would not be served by excluding evidence in one sovereign's proceeding because the violations were committed by agents of another sovereign. The Court further recognized that application of the exclusionary rule may not be mandatory in certain intrasovereign civil proceedings and crafted a balancing test to weigh the social benefits of suppressing illegally-obtained evidence against its social costs.

In *I.N.S. v. Lopez–Mendoza, supra*, the Supreme Court held that the exclusionary rule was not applicable in a civil deportation proceeding to suppress an alien's admission of his unlawful entry into the country after an illegal arrest. In so holding, the court concluded that the purpose of the proceeding was to determine the alien's eligibility to remain in the United States, not to punish his unlawful entry, and the deportation proceeding looked prospectively to the alien's right to remain in the United States.

*Sheetz v. City of Baltimore, supra*, concerned the admission, in a civil administrative discharge proceeding of a city corrections officer, of evidence that had been seized in violation of the Fourth Amendment in a state criminal investigation. The court held that such evidence was admissible unless obtained in bad faith and ordered the case remanded for a determination of that issue.

In so holding, the *Sheetz* court determined that the deterrent effects of the exclusionary rule are minimal in the context of discharge proceedings and observed, as did the Court in *Lopez–Mendoza* with respect to deportation proceedings, that the civil termination proceedings at issue were "typically designed to evaluate employees' actions as they relate to future job performance, rather than to

punish employees for past wrongs." *Sheetz v. City of Baltimore, supra,* 553 A.2d at 1284.

As noted by the ALJ, there is evidence in the record that complainants' drug use could have repercussions on their ability to perform on the job, *i.e.,* complainants' reliability in circumstances in which inmate drug use is at issue and complainant McWhirter's reliability and preparedness as a member of the special response team. We conclude that, in view of these important safety and security concerns about complainants' drug use as it relates to their ability to perform effectively as corrections officers, the Board erred by focusing exclusively on the intrasovereign nature of this action and by failing to consider the societal benefits of removing complainants from contact with inmates. *See Sheetz v. City of Baltimore, supra.*

Although we agree with DOC that the Board erred in its application of the exclusionary rule, we are unpersuaded that *City & County of Denver v. Casados, supra,* cited by DOC in support of its assertions, is helpful here. In *Casados,* Denver city employees challenged, on its face, the constitutionality of an executive order of the mayor of Denver which required mandatory drug testing based upon reasonable suspicion. Because *Casados* did not address the issue of suppression of evidence obtained by a search violative of the Fourth Amendment, it is relevant here only insofar as it distinguishes between security- and safety-sensitive employees and other employees.

We note that, independent of suppression of evidence, persons who establish damages resulting from constitutional violations are not without recourse. *See* 42 U.S.C.A. § 1983 (1994).

■ In summary, we conclude that, in cases in which an employee has a security- or safety-sensitive position, such as those of complainants, suppression of relevant evidence in a civil proceeding may not be the appropriate remedy for alleged constitutional violations.

The order reinstating complainants with backpay and benefits is vacated. The cause is remanded with directions for the Board to reconsider complainants' appeal in light of the evidence of complainants' positive test results indicating the use of marijuana and their admissions of drug use and to review the order of the ALJ to determine whether it is contrary to the weight of the evidence. *See* § 24–4–105(15)(b), C.R.S. (1988 Repl.Vol. 10A).

PLANK and MARQUEZ, JJ., concur.